UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

                 Case No. 23-cr-0014-bhl-4

 v.

WILLIE L. VALES,

    Defendant.

## ORDER

    In July 2022, the United States Postal Inspection Service (USPIS) and the High Intensity Drug Trafficking Area Drug Gang Task Force (HIDTA) began investigating a postal-based drug trafficking organization (DTO). (ECF No. 102-1 at 1–5.) Case agents determined that Dwight Barnes and his girlfriend Angela Redd shipped parcels containing oxycodone pills from Arizona to Milwaukee, Wisconsin. (*Id.* at 5–7.) Case agents also discovered that Defendant Willie Vales had received drug parcels from, and had wired drug proceeds back to, Barnes and Redd. (*Id.* at 11–13.) Case agents identified Vales's address as XXX6 West Wisconsin Avenue, Apt 203, Milwaukee, Wisconsin. (*Id.* at 11.) Case agents were also aware that Vales was on state court extended supervision starting in 2019 for felony offenses, including armed robbery, burglary, and first-degree sexual assault while armed. (ECF No. 102-2 at 2; ECF No. 102-10 at 2; ECF No. 102-12.) Case agents identified six suspected drug parcels mailed from Barnes to Vales and ten money wire transfers, totaling $60,049.11, sent by Vales to members of the DTO between September 14, 2021 and December 13, 2022. (ECF No. 102-1 at 9, 11, 14, 18, & 25.)

    On January 4, 2023, Magistrate Judge Nancy Joseph signed a criminal complaint, finding probable cause to believe that Vales had, from June 2021 to the "present," committed three offenses: conspiracy to launder proceeds of drug trafficking; conspiracy to distribute and possess with intent to distribute a controlled substance; and unlawfully using a communication facility to facilitate the distribution of a controlled substance, in violation of 18 U.S.C. §1956(h) and 21

U.S.C. §§841(a)(1), 841(b)(1)(B), 843(b), and 846. (ECF No. 102-1 at 1.) Judge Joseph issued an arrest warrant for Vales that same day. (*See* ECF No. 102 at 3.)

In preparation for the arrest warrant's execution, law enforcement conducted an operational briefing. (ECF No. 102-10.) During the briefing, Wisconsin Department of Corrections (DOC) confirmed that Vales was on extended supervision for armed robbery, burglary, and first-degree sexual assault while armed. (*Id.* at 2.) A DOC agent also suggested that a search of Vales's residence might be permitted under Wisconsin Act 79. (*Id.*) By its terms, Act 79 provides that a person placed on probation for a felony may have his person, residence, and any property under his control "searched by a law enforcement officer at any time during his or her period of supervision if the officer reasonably suspects that the person is committing, is about to commit, or has committed a crime or a violation of a condition of probation." Wis. Stat. § 973.09(1d).

On January 11, 2023, members of the U.S. Marshals Service, Drug Enforcement Administration, and HITDA executed the warrant signed by Judge Joseph on Vales at his residence. (ECF No. 102-2.) Prior to executing the warrant, law enforcement officers conducted surveillance of his residence and observed his vehicle parked outside. (*Id.* at 1.) Officers went to the defendant's apartment, and at approximately 7:32 a.m., Vales answered the door and members of the Marshals Service arrested him. (*Id.*) They also searched his residence and located a loaded black Springfield Armory .45 caliber XPS semi-automatic pistol in the oven drawer in his kitchen. (*Id.* at 3.) Law enforcement officers also seized suspected marijuana. (*See id.*)

On January 24, 2023, Vales was charged in a twenty-two-count indictment with various drug and firearms-related offenses. (ECF No. 28.) On December 11, 2023, he filed a motion to suppress physical evidence obtained during the search and statements he made to officers at the time of the search. (ECF Nos. 92 & 93.) After briefing, Magistrate Judge William Duffin accepted the government's argument that law enforcement officers had legally searched Vales's apartment pursuant to Act 79. (ECF No. 105.) Although the government presented alternative arguments to justify the search, Judge Duffin did not address those other bases. (*Id.*) In his resulting report, Judge Duffin also recommended that Vales's motion to suppress statements he made during the search, but prior to being advised of his *Miranda* rights, be granted. (*Id.* at 9–18.)

Vales has filed objections to the portions of Judge Duffin's report denying his motion to suppress evidence. (ECF No. 113.) The government has not objected to the suppression of Vales's statements.

While briefing on Vales's objections to Judge Duffin's report was pending, the parties filed a plea agreement. (ECF No. 126.) Vales later repudiated the agreement and moved to have his defense counsel withdraw, a motion the Court granted. (ECF Nos. 141, 144 & 160.) The Court then offered replacement counsel the opportunity to review and potentially revise Vales's objections, which had been filed by prior counsel. (ECF No. 176.) Defense counsel declined the Court's invitation, and on September 27, 2024, the government filed a response to Vales's original filing urging the Court to adopt Judge Duffin's report in its entirety. (ECF No. 183.) The government explained that while it disagreed with Judge Duffin's analysis and ruling on the suppression of Vales's on-scene statements, it did not intend to introduce those statements at trial in any event. (*Id.* at 1.) And it argued that Judge Duffin had correctly denied the balance of Vales's motion to suppress based on his Act 79 analysis and for a number of other reasons. (*Id.* at 6–17.) On September 30, 2024, Vales filed a reply in which he offers no further argument as to the legality of the Act 79 search but contends that if the Court were to rely on the government's alternate theories, an evidentiary hearing would be warranted. (ECF No. 184.) Because the Court determines that the search was legal in the context of Act 79, the Court will overrule Vales's objections and adopt Judge Duffin's report. Vales's motion to suppress will be granted with respect to his statements but denied in all other respects.

## STANDARD OF REVIEW

A district court reviews de novo "those portions of [a Magistrate Judge's] report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *see also* Fed. R. Crim. P. 59(b)(3). This "review requires the district [court] judge to decide the case based on an independent review of the evidence and arguments without giving any presumptive weight to the magistrate judge's conclusion." *Mendez v. Republic Bank*, 725 F.3d 651, 661 (7th Cir. 2013). The district court "makes the ultimate decision to adopt, reject, or modify" the magistrate judge's recommendation. *Schur v. L.A. Weight Loss Ctrs. Inc.*, 577 F.3d 752, 760 (7th Cir. 2009). Unchallenged portions of the report are reviewed only for clear error. *See Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999) (citing *Goffman v. Gross,* 59 F.3d 668, 671 (7th Cir. 1995)).

## ANALYSIS

**I.  Law Enforcement's Search of Defendant's Residence was Legal Under Act 79.**

Individuals on supervised release have diminished expectations of privacy under the Fourth Amendment.  *See United States v. Caya*, 956 F.3d 498, 500 (7th Cir. 2020).  As previously noted, Act 79 permits the lawful search of an individual's residence if the individual is on felony supervision and if law enforcement "reasonably suspects that the person is committing, is about to commit, or has committed a crime or a violation of a condition of probation."  Wis. Stat. § 973.09(1d).  The Wisconsin Supreme Court has explained the "reasonable suspicion" standard in the context of an Act 79 search of an offender on extended supervision:

> Reasonable suspicion is a fairly low standard to meet.  Although it is not possible to state precisely what the term reasonable suspicion means, it is a commonsense nontechnical conception ... that deal[s] with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. Such reasonable suspicion must be based on specific and articulable facts which, taken together with rational inferences form those facts, reasonably warrant that intrusion. A determination of reasonable suspicion is made based on the totality of the circumstances.

*State v. Anderson*, 935 N.W.2d 285, 293–94 (Wis. 2019) (citations and internal quotations omitted).  The Seventh Circuit has noted that, in a similar context, law-enforcement officers "may search a person on parole without *any* suspicion of criminal activity."  *Caya*, 956 F.3d at 500 (citing *Samson v. California*, 547 U.S. 843, 847 (2006)).  In Wisconsin, "extended supervision is essentially judge-imposed parole," and therefore, a search under Act 79, "which requires reasonable suspicion or criminal activity or a violation of supervision, is constitutionally permissible."  *See id.*

In considering whether law enforcement officers had reasonable suspicion to search a defendant on supervised release, courts first consider whether law enforcement had knowledge of the defendant's supervised status and then consider "whether under the totality of the circumstances [the police officers] had reasonable suspicion that [the defendant] was committing, was about to commit, or had committed a crime."  *Anderson*, 935 N.W.2d at 291.  The Court must also consider whether an Act 79 search was conducted in a "reasonable manner," ensuring that it was not "arbitrary, capricious, or harassing."  *United States v. Johnson*, No. 20-cr-214-jps, 2022 WL 102277, at *7 (E.D. Wis. Jan. 11, 2022).

There is no dispute that Vales was on extended supervision following his release from prison on November 26, 2019, and he would remain on supervision until 2030. (*See* ECF No. 102-12 at 1.) It is also undisputed that law enforcement officers knew of Vales's supervision status. (*See* ECF No. 102-2 at 2.) And the officers searched Vales's residence under Act 79 after a federal judge had issued a warrant for his arrest based on a finding of probable cause. (ECF No. 93 at 1–2.) A federal judge's finding that probable cause exists to believe a person committed a crime is more than enough to lead a law enforcement officer to "reasonably suspect[] that the person . . . has committed a crime" under Act 79. *See* Wis. Stat. § 973.09(1d). Under the totality of circumstances, law enforcement also had more than a reasonable suspicion that the defendant had committed or was committing a crime. There is no argument that law enforcement failed to comply with any of the provisions of Act 79. Given these undisputed facts, the Court agrees with Judge Duffin that law enforcement's search of Vales's residence was legal under Act 79. Vales's motion to suppress the physical evidence recovered from his residence is therefore denied.

## CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the Court **OVERRULES** Defendant's objections, ECF No. 113, to Judge Duffin's Order and Recommendation, ECF Nos. 105 & 106, and **ADOPTS** the Recommendation of Judge Duffin.

**IT IS FURTHER ORDERED** that Defendant's Motion to Suppress Physical Evidence and Statements, ECF No. 92, is **GRANTED** with respect to his statements but **DENIED** in all other respects.

Dated at Milwaukee, Wisconsin on November 4, 2024.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge